IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0882-11






BECKY ELIZONDO, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SEVENTH COURT OF APPEALS


LUBBOCK COUNTY





 Meyers, J., delivered the opinion for a unanimous Court.


O P I N I O N 


 Appellant, Becky Elizondo, was charged with theft of fifty to five hundred dollars. 
She filed a motion to suppress a written confession obtained by a loss-prevention officer.
After a suppression hearing, the trial court denied Appellant's motion. She appealed,
claiming that there was an agency relationship between the loss-prevention officer and
law enforcement, and thus her statement was inadmissible under Article 38.22 of the
Texas Code of Criminal Procedure. The court of appeals affirmed the trial court's
judgment. Elizondo v. State, 338 S.W.3d 206 (Tex. App.-Amarillo 2011). We granted
Appellant's ground for review to determine whether the court of appeals erred in
affirming the trial court's denial of Appellant's motion to suppress the written confession
obtained by the loss-prevention officer. We agree with the court of appeals that no
agency relationship existed between law enforcement and the loss-prevention officer, and
we will affirm.

FACTS

 Appellant and her friend were shopping in an Old Navy store. The store's loss-
prevention officer, David Mora, noticed that Appellant's friend was carrying a flat purse.
Mora watched the two women part ways inside the store and meet together behind a
clothing rack a few minutes later. Mora then watched between the racks as Appellant's
friend, standing shoulder-to-shoulder with Appellant, put items of merchandise into her
purse. The two women, followed by Mora, left the store without paying for the items. 
Mora intercepted the women when they were outside the store and asked them to return to
the store. Mora escorted the women to a room, accompanied by a female Old Navy
manager, and retrieved the items from the purse. After retrieving the items, Mora asked
Appellant to read and sign a document entitled "GAP INC. CIVIL DEMAND NOTICE," (1)
a document that contained the statement, "I, Becky Abajo Elizondo, have admitted to the
theft of merchandise/cash valued at $65.00 from GAP INC., Store No. 6220, located at
6249 Slide Rd. I also hereby acknowledge that my detention on this date was reasonable." 
Appellant signed the form, dated it, and completed the address information section. Mora
also had Appellant sign a store receipt reflecting the value of the merchandise and took
photographs of Appellant and the stolen items. After completing what Mora testified was
typical protocol for theft at Old Navy, he called the Lubbock Police Department, and
officers came to the store to arrest Appellant and her friend. Before the trial began, the
District Attorney's office obtained a copy of Mora's Old Navy report, including the civil
demand notice. Appellant filed a motion to suppress the civil demand notice. 

MOTION TO SUPPRESS

 The trial court held a hearing on the motion to suppress outside the presence of the
jury to consider the admissibility of the civil demand notice taken by Mora. Appellant
argued that Mora was required to give Miranda (2) warnings when he obtained the civil
demand notice because he was engaged in an agency relationship with law enforcement. 

 Mora testified that he had been a loss-prevention officer at Old Navy for three
years and had never worked in law enforcement. He testified that, in those three years, he
obtained written confessions in about 99% of the encounters with accused shoplifters. He
stated that the written confessions were kept for the store's records, but the store would
give a copy of the report to a police officer or attorney upon request. Mora said that the
police officer who arrested Appellant did not take a copy of the civil demand notice with
him, although he was aware that one existed. Mora testified that the document was not
handed over to the District Attorney until a couple of months after Appellant was
arrested. Mora explained that, in line with the written policy contained in his manual
provided by Gap Inc., his common practice is to ask the apprehended individual to sign
the confession, however they may refuse to sign it if they wish. Mora stated that the
primary reason for the store's policy requiring all documents to be signed is for punitive
or monetary damages associated with the shoplifting incident. 

 Appellant claimed that, because she was taken to a manager's office and did not
believe she was allowed to leave, she was in custody. She also cited cases stating that, if
a private individual and law enforcement work together, or a private individual acts to
benefit law enforcement, the private individual is required to issue Miranda warnings as
if he were part of law enforcement.

 The State argued that Article 38.22 does not require Miranda warnings for written
confessions taken by private security personnel and pointed the court to Oriji v. State, 150
S.W.3d 833 (Tex. App.--Houston [14th Dist.] 2004, pet. ref'd). The State asserted that
there was no evidence that Mora was acting at the behest of law enforcement or the
District Attorney; rather he collected evidence on behalf of Gap Inc. 

 The trial court denied Appellant's motion to suppress the written confession and
entered findings of fact including that Mora was not a peace officer, that the defendant
was not in custody, and that the civil demand notice contained no Miranda requirements. 
The trial court's conclusion of law was that the civil demand notice was not obtained as a
result of a custodial interrogation of the defendant by a law enforcement officer. The
case proceeded to trial, and Appellant was found guilty of theft of fifty to five hundred
dollars and sentenced to 30 days in jail. 

COURT OF APPEALS

 On appeal, Appellant argued that the trial court erred in failing to suppress her
written confession, claiming that it was obtained in violation of the Fifth and Fourteenth
Amendments of the U.S. Constitution, Article 1, Section 10, of the Texas Constitution
and Article 38.22 of the Texas Code of Criminal Procedure. The court analyzed the
relationship between Mora and law enforcement using the three-factored test from
Wilkerson v. State, 173 S.W.3d 521 (Tex. Crim. App. 2005). The court considered
whether authorities were using Mora for their own purposes and examined records related
to Mora's actions and perceptions and Appellant's perceptions of the encounter with
Mora. The court determined that Mora did not obtain Appellant's statement pursuant to
police practices. Elizondo, 338 S.W.3d at 211. The court further concluded that Mora
was serving his employer's interests and that a reasonable person in Appellant's shoes
would believe that Mora was a loss-prevention officer and not a law-enforcement agent. 
Id. at 212-13. The court of appeals held that the record supported the trial court's
admission of the evidence and affirmed the judgment of the trial court. 

 We granted Appellant's ground for review to consider whether the court of appeals
erred in determining that an agency relationship did not exist between Mora and the
police and District Attorney's office.

ARGUMENTS OF THE PARTIES Appellant argues that Mora was in an agency relationship with law enforcement
and had apparent authority to act on behalf of law enforcement officers. She contends
that officers used Mora to gain un-Mirandized confessions because they themselves could
not do so. Appellant argues that the purpose of the investigation distinguishes agents
from non-agents, but that the perception of the defendant is also relevant. Appellant says
that the court of appeals failed to address the agency relationship and did not thoroughly
address Wilkerson. Appellant contends that Mora's history and continued practice of
receiving un-Mirandized confessions and handing them over to law enforcement shows
that Mora's activities were in tandem with law enforcement. Applying the second factor
in Wilkerson, Appellant states that Mora's purposes in obtaining the confession were to
aid in the prosecution of the case, to maintain a good relationship with law enforcement,
and to prevent defense attorneys from discrediting his testimony. Finally, Appellant
states that her belief in Mora's authority was reasonable because he presented evidence
against her, detained and photographed her, and required her to sign a confession before
he had her taken to jail. 

 Appellant argues that the court of appeals failed to recognize the difference
between an incidental relationship, such as the one in Oriji v. State, and the continued 
complicity of law enforcement in receiving un-Mirandized confessions. Appellant argues
that Mora's history and continued practice of receiving un-Mirandized confessions is a
systematic circumvention of the procedural guarantees of Miranda and Texas Code of
Criminal Procedure Article 38.22. Appellant contends that an agency relationship
between Mora and law enforcement is apparent. Finally, Appellant says that Estelle v.
Smith, 451 U.S. 454 (1981), requires Miranda warnings for any statement that is to be
used in a criminal proceeding and applies to anyone who gathers information that could
someday be used for criminal prosecution.

 The State disagrees with Appellant's characterization of Estelle v. Smith, stating
that Smith involved a defendant in a post-arrest setting who was compelled by a court to
provide evidence against himself, so Miranda warnings were obviously required. 
However, the State says Miranda warnings are not required for all custodial
questioning-only for questioning by law enforcement or their agents. The State posits
that we should apply the Wilkerson factors to the facts of this case to determine whether
there is an agency relationship with law enforcement that would require Miranda
warnings before questioning.

 The State says that nothing in the record shows that officers were using Mora as an
agent to obtain a statement from Appellant. According to the State, Mora was acting on
behalf of a private company and did not even contact the police until he had completed
his civil investigation. Mora turned over Appellant's statement because the District
Attorney's office requested it, not because he was acting as an agent of law enforcement. 
The State says that Mora's primary purpose for questioning Appellant was to conduct a
civil investigation for a private company. Mora did not hold himself out as law
enforcement, he did not wear a uniform or badge, and he conducted his investigation in
the Old Navy manager's office. 

 The State contends that these factors weigh against a finding that Mora was acting
as an agent of law enforcement. The State concludes that, because Mora was not acting
as an agent of law enforcement, he was not required to give Miranda warnings and
Appellant's statement was admissible under Texas Code of Criminal Procedure Article
38.22, Section 5.

STANDARD OF REVIEW We review a trial court's ruling on a motion to suppress under an abuse-of-
discretion standard. When the trial court's findings of fact are based on an evaluation of
credibility and demeanor, we afford almost total deference to the trial court's
determination of facts that are supported by the record. We review de novo the trial
court's application of the law to the facts and uphold the trial court's ruling if it is
supported by the record and is correct under any theory of law applicable to the case. 
State v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000).

STATUTES AND CASE LAW

 In Miranda v. Arizona, the United States Supreme Court held that, in order to
ensure that criminal suspects in custody are aware of their rights under the United States
Constitution, police must give formal warnings before suspects are interrogated. 384 U.S.
436. Miranda defined "custodial interrogation" as "questioning initiated by law
enforcement officers after a person has been taken into custody." Id. at 444. Texas Code
of Criminal Procedure Article 38.22 provides that a written statement made by an accused
as a result of custodial interrogation is inadmissible if the accused did not receive
Miranda warnings. The issue here is whether Miranda applies when questioning is
initiated by someone other than law enforcement.

 We introduced a test in Wilkerson v. State to determine whether non-law
enforcement state agents are required to give Miranda warnings. In Wilkerson, a Child
Protective Services investigator interviewed a father who was in police custody for injury
to a child. 173 S.W.3d 521. The CPS worker needed to discuss the placement of
Wilkerson's children in foster care and did not give Miranda warnings prior to speaking
with him. During the interview, Wilkerson told the CPS worker about spanking his son,
and this information was included in the CPS report that was forwarded to the police. We
held that non-law-enforcement state agents are required to give Miranda warnings only
when acting in tandem with the police to gather evidence for a criminal prosecution. Id.
at 523. To determine if an agency relationship exists, the courts must examine the entire
record and consider three factors: (1) the relationship between the police and the potential
police agent, (2) the interviewer's actions and perceptions, and (3) the defendant's
perceptions of the encounter. Id. at 530-31. The test helps courts determine whether the
interviewer was acting as an instrumentality or was "in cahoots" with the police or
prosecution. Id. at 531.

 We concluded that Wilkerson's statements to the CPS worker were admissible
because the CPS worker was not acting as an agent of law enforcement; rather she visited
Wilkerson in jail as part of a routine CPS procedure. Id. at 532. Because there was
nothing in the record to indicate that the police knew about the interview, that they spoke
to the CPS worker before the interview, or that they solicited her to gain information from
Wilkerson, we determined that the CPS worker was not acting as an agent of law
enforcement. Id. at 533.

 The facts of Oriji v. State are very similar to the case before us. In Oriji, the court 
admitted into evidence a written confession of theft made without Miranda warnings to a
Foley's loss-prevention officer. 150 S.W.3d at 833. The court of appeals concluded that,
because the loss-prevention officer did not elicit the incriminating information from the
defendant at the request of the police, he was not engaging in a custodial interrogation
requiring Miranda warnings. Id. at 836-837. The court stated that "[p]rivate citizens,
even security guards, are not ordinarily considered 'law enforcement officers.'" Id. at
836. Because law enforcement did not know of or initiate the loss-prevention officer's
effort to obtain a confession, the statement was not for law enforcement purposes. Id. at
837.

ANALYSIS

 The law does not presume an agency relationship, and the party alleging such a
relationship has the burden of proving that it exists. Wilkerson, 173 S.W.3d at 529. 
Appellant argues that there was an agency relationship between Mora and law
enforcement because of: (1) the complicity of law enforcement as evidenced by the 
continuing relationship between Mora and the police, (2) the prosecutorial purpose of
Mora's investigations, and (3) Appellant's reasonable belief that Mora was acting under
the veil of authority. Because of this relationship, Appellant argues, Miranda warnings
were required in order for her written confession to be admissible. To determine if Mora
was working as an agent of law enforcement, we will apply the three Wilkerson factors to
the facts of this case. 

The Relationship Between The Police and the Potential Police Agent

 First, we look for information about the relationship between the police and Mora. 
Mora stated that every time he apprehended shoplifters he asked them to fill out a civil
demand notice for Old Navy's records, and that 99% of the time the accused shoplifter
signed the document. While officers may have been aware that Old Navy had a policy of
obtaining a civil demand notice, there is no indication that this knowledge led to a
calculated practice between the police and the store's loss-prevention staff. The police
had not even been contacted when Mora obtained Appellant's confession, so they clearly
did not instruct Mora to get specific information or give him questions to ask Appellant. 
The police were not using Mora to get information from Appellant that they could not
lawfully obtain themselves, and neither the police nor the DA's office asked Mora to
obtain an admission of guilt to use in a criminal proceeding. 

The Interviewer's Actions and Perceptions

 The second part of the Wilkerson test evaluates the purpose of the interview. In
Oriji, the record showed that a written confession was obtained in order to further the
store's need to prevent theft and was not for law enforcement purposes. 150 S.W.3d at
837. Similarly, in Wilkerson, we concluded that the CPS worker was not an agent of law
enforcement because her questioning of the defendant was part of her duty regarding the
placement of his children in foster care. 173 S.W.3d at 532. Here, Mora's reason for
obtaining the civil demand notice was to adhere to the policies in the Gap Inc. loss-
prevention manual. Although Gap Inc.'s policy manual says that theft incident reports
serve to aid in criminal prosecutions and convictions, help maintain a good rapport with
law enforcement, and prevent defense attorneys from discrediting the testimony of the
loss-prevention staff, those are not the primary purposes of the report. The manual says
reports, which should include a civil demand notice, are necessary to record and preserve
observations, details, and information about the events surrounding the theft, and it says
that the reports are for company use and records only. The civil demand notice states that
the law permits merchants to recover civil monetary damages and that the civil penalties
are not intended to compromise any criminal action the store may seek as a result of the
shoplifting incident. While Mora did help build a case that led to Appellant's arrest, and
his testimony indicates that the purpose of obtaining a written confession goes beyond
merely civil reasons, his primary duty was to document the incident for company records. 
The record indicates that Mora believed that he was following Old Navy policy and
acting on the store's behalf, not acting as a police agent. 

The Defendant's Perceptions of the Encounter

 Under the third Wilkerson factor, because there is nothing in the record from the
suppression hearing regarding Appellant's perception of her encounter with Mora, we
consider whether a reasonable person in Appellant's position would believe that Mora
was a law-enforcement agent. See Id. at 531. Mora testified that he was not wearing a
uniform when he approached Appellant and her friend outside the store. He informed
them that he was a loss-prevention officer for Old Navy, escorted them to the store
manager's office, and asked them to fill out paperwork about the theft. A female Old
Navy manager was present during the encounter, and the door to the manager's office was
left ajar. Mora printed out an Old Navy store receipt for the items found in Appellant's
purse and photographed Appellant and the stolen items. Under these circumstances, we
cannot say that a reasonable person in Appellant's position would believe that Mora was a
law-enforcement agent. There was nothing in the record indicating that Mora appeared to
Appellant to be cloaked with the actual or apparent authority of the police. See Id. at 530.CONCLUSION We conclude that Mora was not acting in tandem or "in cahoots" with the police. 
The fact that Mora eventually gave the District Attorney's office a copy of Appellant's
written confession does not transform him into an agent of law enforcement. See
Wilkerson, 173 S.W.3d at 533. Because Mora was working on a path parallel to, yet
separate from, the police, Miranda warnings were not required in this situation. See
Wilkerson, 173 S.W.3d at 529. The record supports the trial court's decision to deny
Appellant's motion to suppress the written confession and the court of appeals did not err
in affirming the trial court's denial of the motion to suppress. The judgment of the court
of appeals is affirmed.


 Meyers, J.


Delivered: November 7, 2012

Publish
1. Gap Inc. is the parent company of Old Navy clothing stores.
2. Miranda v. Arizona, 384 U.S. 436 (1966).